STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MOLLY K. PRIEDEMAN (CABN 302096)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3717
    FAX: (510) 637-3724
    Molly.Priedeman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 22-cr-00059 HSG |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| SHELBEE SZETO, | |
| Defendant. | Hearing Date: August 17, 2022<br>Time: 2:00 pm<br>Judge: Hon. Haywood S. Gilliam Jr. |

## INTRODUCTION

On February 11, 2022, the government filed a five-count Information charging the defendant, Shelbee Szeto, with violations of 18 U.SC. § 1343 – Wire Fraud (Counts One and Two); 18 U.S.C. § 1957 – Money Laundering (Counts Three and Four); and 26 U.S.C. § 7206(1) – Filing False Tax Return (Count Five). On March 23, 2022, Szeto pled guilty to Counts One through Five of the Information. Sentencing is currently set for August 17, 2022 at 2:00 pm.

Over the course of several years, Szeto brazenly stole $4.8 million dollars from her employer, HP Inc. ("HP"). Szeto's theft was not an accident, or a slip up, but instead was a deliberate abuse of her employer's trust. As part of her employment, Szeto was given HP issued credit cards to make work

related payments.  Instead, Szeto made millions of dollars of payments from the HP cards to accounts under her control.  To cover up her theft, Szeto submitted fraudulent invoices to HP to make it looks like the payments were going to HP approved vendors.  Szeto spent the proceeds of her fraud with abandon, buying millions of dollars' worth of luxury jewelry and vehicles.  Significantly, this is not the first time Szeto has embezzled from her employer.  Prior to joining HP, Szeto stole $50,000 from her former employer.  In fact, Szeto was on probation for a conviction related to that theft when she first began stealing from HP, and even used the proceeds of her theft in this case to pay her restitution obligation in her prior case.  In other words, Szeto did not learn her lesson when she was caught the first time.  Instead, she doubled down on her theft, and stole millions more.

      For the reasons set forth below, the United States recommends a sentence of 42 months imprisonment to be followed by a three-year term of supervised release, forfeiture of the items listed in the plea agreement, restitution for $6,090,107.87, and a $500 special assessment.

## BACKGROUND

### I. Offense Conduct

      From approximately August 7, 2017 to June 23, 2021, Szeto was employed by HP Inc. ("HP") as a Financial Planning Manager.  PSR ¶ 12.  As part of her employment with HP, Szeto was issued two American Express HP credit cards.  *Id.*  Per HP policy, Szeto was permitted to make payments using the HP credit cards to HP approved vendors for approved business expenses.  *Id.*  Payment of personal expenses using HP credit cards was prohibited by HP.  *Id.*  Despite Szeto's awareness of the policy, between March 2019 and March 2021, Szeto made over $4.8 million in payments from her two HP corporate credit cards to fraudulent Square, Stripe, and Paypal merchant accounts[1] under her control.  *Id.* ¶ 13.  Szeto attempted to change another $330,000 from one of the HP cards to a Square account under her control, but Square rejected the transaction.  *Id.* ¶ 15.  In an attempt to hide her fraud, Szeto submitted false invoices to HP that falsely represented that the Square accounts belonged to legitimate vendors approved by HP.  *Id.* ¶ 16.  She also falsely represented to Square that the accounts for legitimate consulting companies.  *Id.*  Szeto spent the proceeds of the fraud lavishly: she used the

---

[1] A "merchant account" is an account that permits an employee of a business to accept credit and debit card payments.  Square, Stripe, and PayPal provide merchant accounts to their business customers.

proceeds on luxury items, including jewelry, a Porsche and a Tesla, and a down payments on a house. *Id.* ¶ 15. As detailed below, while Szeto was stealing from HP, she was on probation for embezzling funds from her prior employer. Szeto used the proceeds of her theft from HP to pay the restitution she owed for that case. *Id.*

Szeto failed to report the fraudulent proceeds that she derived from the fraud scheme in 2019 and 2020. In 2019 and 2020, Szeto failed to report approximately $3,437,105.45 in unreported income from her fraud scheme. *Id.* ¶ 19. As a result, Szeto owes a total of $1,219,339 in federal income taxes. *Id.*

## II.     Szeto's Criminal History

Significantly, this is not the first time Szeto has embezzled from an employer. Szeto's conduct is part of a demonstrated pattern of abusing her employers' trust and stealing their money. Between November 30, 2016 and June 22, 2017, Szeto was employed by Indicate Technologies Inc. PSR ¶ 38. While employed by Indicate, Szeto deposited approximately $50,000 of checks from Indicate Technologies' company account into her personal account without permission. *Id.* To cover up her fraud, Szeto generated fraudulent work orders and invoices to cover up the fact that she had issued company checks to herself. *Id.* In February 2019, Szeto was convicted of Grand Theft by an Employee in violation of California Penal Code 484-487(b)(3). *Id.* Szeto was on probation for that offense when she committed the instant offense. *Id.*

## ARGUMENT

## I.     Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II. Sentencing Guidelines Calculation

On July 27, 2022, the Probation Office issued the Final PSR.  Probation determined that Szeto's advisory guidelines are 57-71 months, based on a total offense level of 23 and a criminal history of III.  The government is in agreement with the guidelines calculation.

## III. The United States' Sentencing Recommendation

Szeto's charged conduct was egregious.  Szeto stole over $4.8 million dollars from HP during the course of her several year scheme, and she would have stolen even more if Square had processed her additional payments.  Her theft was deliberate, purposeful, and brazen in its scope.  Szeto knew what she was doing wrong, and she knew that she had to lie to cover up her deceit by generating fraudulent invoices.  Szeto spent the fraudulent proceeds for her own gain, spending the money lavishly on luxury clothes, jewelry, and vehicles.

What makes Szeto's crime even more egregious is the fact that while she was stealing from HP, she was on probation for the *very same* type of theft from her prior employer.  In 2019, Szeto pled guilty to stealing from her prior employer, Indicate Technologies.  But instead of learning her lesson after getting caught in the act the first time, she turned around and committed the *exact same crime* while under state court supervision.  She significantly upped her level of theft the second time around, stealing *millions* more than she had stolen from her prior employer and using the stolen proceeds from HP to pay off her restitution in her state case.  Szeto's actions speak louder than words: a conviction for fraud was not enough to deter her from committing another crime.  In fact, it did quite the opposite.  After her prior conviction, her fraud and level of deceit reached new levels.  Szeto's proclivity to steal indicates that there is a significant danger she will reoffend.  A significant custodial sentence is necessary to send a strong message that her criminal conduct will not be tolerated and cannot be repeated.

The government recognizes that there are mitigating circumstances that warrant consideration by

the Court.  First, the Defendant accepted responsibility, waived indictment, and agreed to plead guilty shortly after the search warrant was executed at her residence.  Second, Szeto appears to have endured a traumatic upbringing and has struggled with substance abuse and mental health issues.

The facts of this case, underscored by Szeto's criminal history, and the need for general and specific deterrence, taking into account Szeto's mitigating circumstances, warrant a sentence of 42 months' imprisonment, to be followed by a three-year term of supervised release with the condition recommended by probation and agreed to by the parties in the plea agreement, a restitution order, and a forfeiture order are sufficient, but not greater than necessary, to comply with the factors set out above.

## CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Defendant to 42 months in prison, a three-year term of supervised release with the conditions recommended by Probation and agreed to in the plea agreement, $6,090,107.87 in restitution, and a $500 special assessment.  The Court should also order Defendant to forfeit her interest in the items set forth in paragraph 11 of the parties' proposed plea agreement.

DATED: August 10, 2022                                Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*Molly K. Priedeman*
_____
MOLLY K. PRIEDEMAN
Assistant United States Attorney